IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES HUGHES                                                                                                    PLAINTIFF

V.                                                        NO. 15-5203

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, James Hughes, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income benefits (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff filed his current application for SSI benefits on August 29, 2012, alleging an inability to work since January 9, 2011,[1] due to seizures and learning disabilities. (Doc. 12, pp. 142-150, 162, 166). An administrative hearing was held on December 13, 2013, at which Plaintiff appeared with counsel, and he and his mother testified. (Doc. 12, pp. 29-51).

By written decision dated February 7, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

---

[1] Plaintiff's attorney amended the onset date to August 29, 2012, the application date, at the hearing held before the ALJ. (Doc. 12, p. 32).

1

seizure disorder; attention deficit hyperactivity disorder (ADHD), nos; and borderline intellectual functioning. (Doc. 12, p. 17). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except he must avoid exposure to unprotected heights and dangerous machinery; he must avoid work that requires driving; he is able to perform simple, routine and repetitive tasks involving only simple, work-related decisions, with few, if any workplace changes and no more than incidental contact with co-workers, supervisors and the general public.

(Doc. 12, pp. 19-20). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as fishing reel assembler and eye glass frame polisher. (Doc. 12, pp. 23-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 24, 2015. (Doc. 12, pp. 4-8). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law**:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583

2

(8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe

physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in failing to find Plaintiff's seizure disorder met and/or equaled the criteria of Listing 11.03; 2) Whether the ALJ erred in failing to proffer a hypothetical question to the VE that precisely described Plaintiff's impairments; and 3) Whether the ALJ erred by ignoring witness statements describing Plaintiff's physical limitations and symptoms related to his seizures. (Doc. 10).

#### A.  Listing 11.03

Plaintiff argues that Plaintiff's symptoms satisfy the listing requirements set forth in Listing 11.03, which provides:

> *Epilepsy – nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness of loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

4

Plaintiff has the burden of proving his impairment meets or equals a listed impairment. Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010). In his decision, the ALJ discussed Listings 11.02–Epilepsy–Convulsive Epilepsy, and 11.03 – Epilepsy – Non-convulsive Epilepsy. (Doc. 12, pp. 17-18). The ALJ concluded that with respect to Listing 11.03, the available medical evidence did not demonstrate a typical seizure pattern occurring more frequently than once weekly, in spite of at least three months of prescribed treatment with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. (Doc. 12, pp. 17-18). The Court believes the ALJ was correct in his conclusion.

Plaintiff's first seizure occurred on October 9, 2011. (Doc. 12, p. 261). Plaintiff's Application for SSI benefits was filed on August 29, 2012. (Doc. 12, pp. 142-150). In a September 6, 2012 Pain Questionnaire, no medications were listed. (Doc. 12, p. 189). The fact that Plaintiff was not taking any medications was confirmed by Plaintiff's mother in her Function Report-Adult-Third Party, dated September 6, 2012. (Doc. 12, p. 207). In a Mental Diagnostic Evaluation and Intellectual Assessment, performed by Jason R. Glass, Psy.D., dated November 5, 2012, Dr. Glass reported that Plaintiff denied a history of taking psychotropic medications. (Doc. 12, p. 278). Dr. Glass diagnosed Plaintiff with ADHD, NOS, and borderline intellectual functioning, and gave him a GAF score of 50-60. (Doc. 12, p. 280).

In his Statement dated January 17, 2013, Plaintiff reported that he had 20 or more seizure attacks in the previous year and had five or more in the previous month. (Doc. 12, p. 216). In an Internal Medicine Report, prepared by Dr. Chet Crawford, dated January 27, 2013, Dr. Crawford reported that Plaintiff had not been seen by a neurologist and was not taking any medications. (Doc. 12, p. 284). Plaintiff also denied any recent hospitalizations in the previous two years. (Doc. 12, p. 285). Dr. Crawford concluded that Plaintiff needed to be treated for his seizure disorder and if treated, he suspected that Plaintiff would be able to work a normal eight-hour day at a sedentary exertion-type job. (Doc. 12 , p. 287).

It was not until April 9, 2013, that a medical record from the Free Health Center revealed that Plaintiff was prescribed medications for his seizures. (Doc. 12, p. 300). On April 24, 2013, Topamax was prescribed (Doc. 12, p. 298), and on May 29, 2013, Plaintiff reported having three seizures since his last visit. (Doc. 12, p. 296). However, on June 18, 2013, Plaintiff reported no seizures since he began taking Topamax. (Doc. 12, p. 293). On October 24, 2013, Plaintiff was prescribed an increase in the Topamax dosage and was instructed to see a neurologist, who was scheduled to return to the health center in two months. (Doc. 12, p. 292). In a report from the Free Health Center dated December 3, 2013, it was reported that Plaintiff had not had a seizure in three to four months. (Doc. 12, p. 302).

At the hearing held on December 13, 2013, Plaintiff testified that he began two of the medications in May of 2013, and that the Topamax was increased in November of 2013. (Doc. 12, p. 32). He also testified that the medications were helping and had slowed down the seizures, and that the number of seizures he had

6

varied every week. (Doc. 12, p. 32). At the time of the hearing, Plaintiff was waiting for his prescription to be verified before it could be filled. (Doc. 12, p. 33).

The Court does not believe Plaintiff has met his burden of proving the required frequency of seizures despite taking medication for three months, as required by Listing 11.03. As noted by Defendant, the highest frequency of seizures occurred in December of 2013, which is the only time the medical record shows Plaintiff reported a seizure frequency of at least once each week. However, at the December 2013 administrative hearing, Plaintiff testified he was not taking his medication. Accordingly, Plaintiff was not taking his seizure medication at the only time his seizure frequency could have met criteria for Listing 11.03. Even if Plaintiff met the frequency requirement at any time, he failed to prove he complied with medication for three months.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's impairments did not meet or equal Listing 11.03.

### B. Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical

7

evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

Plaintiff argues that the ALJ erred in his RFC determination because he ignored witness statements which described Plaintiff's physical limitations and symptoms related to his seizures.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-

8

MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

When the ALJ omits a discussion of a witness statement, "[i]n general such an omission need not lead our court to reverse an ALJ's otherwise-supported decision." Nowling v. Colvin, 813 F.3d 1110, 1118 (8th Cir. 2016). In the case now before the Court, the ALJ gave consideration to "all the evidence presented related to the … observations of non-medical third parties, … ." (Doc. 12, p. 20). In addition, the ALJ discussed the opinion evidence of Plaintiff's mother at length. (Doc. 12, p. 22). The ALJ explicitly stated that he considered the information provided by her, and concluded that it was:

> largely supportive of the claimant's allegations; however, by virtue of the relationship with the claimant, she cannot be considered a disinterested third party witness whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleged.

(Doc. 12, p. 22). The ALJ gave the mother's report little weight because it was not consistent with the medical evidence in the case. With respect to the reports of the other family members, they not only relate to when Plaintiff was not taking medications or seeing a physician to treat his seizures, they are merely cumulative of the mother's statement.

Based upon the foregoing, the Court finds there is substantial evidence to support the fact that the ALJ properly considered the third-party statements.

### D. Hypothetical Question to VE:

Plaintiff argues that the ALJ failed to include in his hypothetical question Plaintiff's limitations with concentration, persistence and pace. At the hearing, the ALJ posed the following hypothetical question to the VE:

9

> Q: Okay. Let me ask you to consider someone the claimant's same age, education, and work experience, who can do sedentary work with no exposure to unprotected heights and dangerous machinery; can perform simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace dangers; no more than incidental contact with coworkers, supervisors, or the general public; and no driving. Can the claimant perform his past work?
>
> A: Oh, no Your Honor. No, Your Honor.
>
> Q: Any other jobs?
>
> A: Yes, Your Honor. …assembly worker; in particular a fishing reel assembler. … there would be production work; in particular an eyeglass frame polisher. …

(Doc. 12, p. 50). In Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001), the Eighth Circuit found that the ALJ's hypothetical concerning someone who was capable of doing simple, repetitive, routine tasks adequately captured the claimant's deficiencies in concentration, persistence or pace. As the ALJ's hypothetical to the VE in this case limited Plaintiff to simple, repetitive, routine tasks, said hypothetical sufficiently took into account any deficiencies Plaintiff had in concentration, persistence or pace.

Therefore, after thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical question the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform such jobs as fishing reel assembler and eye glass frame polisher. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 27th day of December, 2016.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE